United States Court of Appeals,

Eleventh Circuit.

No. 96-2345.

Peggy H. TERRELL, Plaintiff-Appellant,

v.

USAIR, Defendant-Appellee.

Jan. 6, 1998.

Appeal from the United States District Court for the Middle District of Florida. (No. 94-245-CIV-ORL-22), Anne C. Conway, Judge.

Before TJOFLAT, ANDERSON and EDMONDSON, Circuit Judges.

EDMONDSON, Circuit Judge:

Plaintiff-Appellant appeals the district court's grant of summary judgment on her claim under the Americans with Disabilities Act ("ADA"). Plaintiff argues that the district court erred in concluding as a matter of law (1) that she was not disabled and (2) that, in the alternative, USAir had reasonably accommodated her as required by the ADA. We hold that, even assuming Plaintiff had a disability as defined by the ADA, USAir reasonably accommodated Plaintiff's disability. Because summary judgment was proper on the reasonable accommodation issue, we affirm.

I.

Plaintiff Peggy H. Terrell has been employed by USAir (or its predecessor, Piedmont Aviation) since 1982 as a reservations sales agent. She is currently employed at USAir's Orlando Reservations Center. As a reservations agent, Plaintiff sits at a computer terminal, takes calls from people making inquiries or seeking to make flight arrangements, provides information and makes passenger reservations. The job requires Plaintiff to type constantly on a keyboard or telephone keypad.

In 1991, Plaintiff filed a workers' compensation claim alleging she had developed carpal tunnel syndrome ("CTS") because of her job. Plaintiff's physician, Dr. White, prescribed restrictions on the hours which Plaintiff could work each day. During 1991 and 1992, Plaintiff made four requests for schedule modifications based on Dr. White's advice; and USAir modified Plaintiff's schedule each time as requested.[1]

In 1992, a second physician, Dr. Foncea, recommended surgery for Plaintiff's condition and also recommended that the four-hour restriction on her workday continue. While on leave for her surgery, Plaintiff continued to receive her full-time salary until 8 February 1993, under USAir's salary continuance program, which pays the difference between worker's compensation benefits and the employee's full-time salary. Following her surgery on 9 December 1992, Plaintiff was unable to return to work until 19 April 1993. After Plaintiff's return to work in April 1993, Dr. Foncea recommended that she remain restricted to four-hour days, which USAir accommodated. Beginning in April 1993, Plaintiff was compensated only for the hours she actually worked.

While Plaintiff was on medical leave for her surgery, Dr. Foncea also requested that USAir modify Plaintiff's work station "according to advice." Plaintiff understood the modifications to include a drop keyboard.[2] When Plaintiff returned to work in April 1993, she was not provided with a drop keyboard, but was told to use a work station with a drop keyboard when it was available. When a drop keyboard was unavailable and Plaintiff complained to her supervisor about increased pain, she was told just to listen in on other agents' calls.

---

[1]In December 1991, Plaintiff was limited to working four hours per day for three days. In January 1992, she was limited to working four hours per day for two weeks then six hours per day for another two weeks. In March 1992, Plaintiff was limited to six hours of work per day. In June 1992, she was limited again to four hours of work per day.

[2]A "drop keyboard" is a keyboard that is adjustable in height and depth to make its use more comfortable.

By 28 May 1993, Plaintiff had exceeded the sixty-day limit allowed by USAir for injured employees to work on "limited duty" (meaning fewer hours than the employee's scheduled shift); and USAir placed her on unpaid medical leave. At that time, USAir had no permanent part-time reservations agents at the Orlando Center because the part-time employees had been furloughed during 1990 and 1991. In late 1993, however, USAir reconsidered using part-time reservations agents at its Orlando Center and contacted Plaintiff, along with other former part-time reservations agents who had been furloughed in 1990 and 1991, about whether she was interested in working part-time at USAir. Plaintiff responded that she was interested, and she was recalled as a part-time reservations agent in April 1994. After she returned, Plaintiff was provided with a drop keyboard. The recalled part-time agents initially worked four hour shifts until USAir lengthened the part-time shifts to five hours. Plaintiff worked the new five hour shift for a few months until October 1994, when her doctor recommended that she work only four hours per day. USAir modified Plaintiff's schedule as requested; and, as of the date of oral argument in this case, Plaintiff continued to work four hours per day as a reservations agent for USAir.

In 1994, Plaintiff sued USAir for discrimination in violation of the ADA and the Age Discrimination in Employment Act ("ADEA"). The district court granted summary judgment for Defendant USAir on both claims.[3] On Plaintiff's ADA claim, the district court concluded that Plaintiff had not presented a triable issue of fact on whether she was disabled and that, even if Plaintiff was disabled, she had not presented a triable issue of fact on whether USAir failed to accommodate reasonably her disability. Plaintiff challenges both of these conclusions on appeal.

II.

---

[3]Plaintiff does not appeal the grant of summary judgment on her age discrimination claim under the ADEA.

We review the district court's grant of summary judgment *de novo,* viewing the facts in the light most favorable to Plaintiff. *Parks v. City of Warner Robins, Ga.,* 43 F.3d 609, 612-13 (11th Cir.1995).

Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To state a prima facie case of disability discrimination, a plaintiff must show (1) that she has a disability; (2) that, with or without reasonable accommodations, she can perform the essential functions of the position she holds; and (3) that she was discriminated against because of her disability. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278 (11th Cir.1997); 42 U.S.C. § 12111(8) (defining "qualified individual" the same as factor (2) above). "[T]he burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Stewart,* 117 F.3d at 1286; *see also Willis v. Conopco, Inc.,* 108 F.3d 282, 284-86 (11th Cir.1997). Once the plaintiff has met her burden of proving that reasonable accommodations exist, the defendant-employer may present evidence that the plaintiff's requested accommodation imposes an undue hardship on the employer. *Willis,* 108 F.3d at 286.

For the purpose of this appeal, we assume that Plaintiff has made a prima facie showing of disability.[4] About reasonable accommodations, Plaintiff argues that, when she was placed on

_____

[4]The ADA defines a disability, in relevant part, as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). "Working" is a "major life activity," *see Stewart,* 117 F.3d at 1285 (quoting *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 [11th Cir.1996] ), which is substantially limited when the disability " "significantly restrict[s the] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.' " *Id.*

medical leave in 1993, she could perform the essential functions of her job as a reservations agent—including continuous typing on the keyboard—with the following accommodations: (1) a part-time position; (2) a drop keyboard; and (3) five-minute breaks every hour. She argues USAir did not reasonably accommodate her as requested.

A. *Part-Time Position*

Plaintiff argues that USAir failed to accommodate her reasonably by refusing to place her in a part-time (four hours per day) position in May 1993 instead of placing her on unpaid medical leave. USAir argues that it had no duty to place Plaintiff in a part-time position as a reservations agent because no such positions existed at USAir's Orlando office—much less were vacant—when Plaintiff was placed on medical leave. According to the affidavit of the office administrator for USAir's Orlando Reservations Center, Willetta Barr, all part-time reservations agents at the Orlando office had been furloughed during 1990 and 1991. In late 1993, USAir decided to reinstate part-time reservations agent positions and contacted former part-time agents, including Plaintiff, about returning to work. Plaintiff returned to work in April 1994 along with the furloughed part-time agents.

Plaintiff argues that a factual dispute exists about whether reservations agents worked part-time at USAir when Plaintiff was placed on medical leave. Plaintiff points to a statement in her affidavit that "[s]hifts come and go throughout the day at USAir, Inc. Reservation Center in Orlando,

Here, the district court concluded that Plaintiff was not disabled because she had not shown that her CTS substantially limited a major life activity. Plaintiff makes a forceful argument that she has established a triable issue of fact on whether she is substantially limited in the major life activity of working. At the time of the district court's order, she was fifty-four years old; and she had been in the same position with USAir for over thirteen years. She has a high school equivalency degree but no college degree. These factors add support to her argument. We need not address this issue, however, because the district court correctly ruled that USAir reasonably accommodated Plaintiff's CTS.

including reservations agents who are both full time and part time, and my position is not vacant the four hours per day I am unable to work." This statement, however, does not support Plaintiff's argument because it refers to USAir's employment of part-time agents at its Orlando office in 1995 when Plaintiff made this affidavit. The relevant factual inquiry is whether or not the Orlando office had part-time positions available in 1993 when Plaintiff was placed on medical leave. *See also Holifield v. Reno,* 115 F.3d 1555, 1564 n. 6 (11th Cir.1997) (conclusory allegations, without more, insufficient to withstand summary judgment).

Plaintiff presented no evidence in the district court that part-time reservations agent positions existed at USAir in 1993. When asked in her deposition whether there were part-time agents employed in the Orlando Reservations Center in 1991, Plaintiff responded "I don't think so, but I'm not really sure." Plaintiff also acknowledged in her deposition that, when she returned to work part-time in 1994, USAir recalled many agents who had been furloughed. Even viewing the evidence in the light most favorable to Plaintiff, the district court correctly concluded that Plaintiff has presented no issue of fact about whether part-time reservations agent positions—meaning positions requiring four hours of work or less per day—existed at USAir when she was placed on medical leave.[5]

---

[5]Evidence existed in the district court—in the form of Plaintiff's deposition testimony and Barr's affidavit—that, at the time Plaintiff was placed on medical leave in 1993 and throughout her medical leave, a class of employees designated as "intermediate agents" worked *six* hours per day at USAir's Orlando office. These "intermediate agents" were former Piedmont (USAir's predecessor) reservations agents who had worked six hours per day at Piedmont and were hired in the same capacity by USAir when Piedmont became USAir. When an intermediate agent leaves her position at USAir, the position is eliminated; and USAir does not hire a new intermediate agent to fill the position. None of those positions could have accommodated Plaintiff, whose CTS restricted her work to *four* hours per day.

The existence of intermediate agent positions at USAir while Plaintiff was on medical leave does not change our conclusion that Plaintiff has presented no triable issue of fact on whether "part-time" positions existed when she was placed on medical leave.

Accepting that no part-time reservations agent positions existed in 1993, the question remains whether USAir had a duty to *create* a part-time position for Plaintiff to accommodate her CTS. The district court concluded that USAir was required to create no part-time position, relying on cases stressing that employers are not required to create "light-duty" positions for their disabled employees under the ADA. *See, e.g., Howell v. Michelin Tire Corp.,* 860 F.Supp. 1488, 1492 (M.D.Ala.1994) ("Reasonable accommodation [ ] does not require that an employer create a light-duty position or a new permanent position.").

Plaintiff argues that the district court erred by relying on "light-duty" cases in holding that USAir had no duty to create a part-time position for her. She notes that one performing "light-duty," by definition, is not as productive as one performing full-duty because, "[i]n most cases, [ ] "light-duty' positions involve a totally different job from the job that a worker performed before the injury." *Howell,* 860 F.Supp. at 1492 (quoting Equal Employment Opportunity Commission, Technical Assistance Manual § 9.4). In contrast, a part-time employee works the same job, only on a shortened schedule.

Plaintiff asserts that the ADA establishes that part-time work is per se a reasonable accommodation because the statute lists "part-time or modified work schedules" as possible accommodations. 42 U.S.C. § 12111(9)(B). According to Plaintiff, once part-time work has been identified as a reasonable accommodation, the burden shifts to the employer to show undue hardship. Because USAir asserted no defense of undue hardship in this case, Plaintiff contends that

_____

In May 1993, when USAir placed Plaintiff on leave, Plaintiff's doctor had limited Plaintiff to working no more than four hours per day; and Plaintiff has continued to be limited to four hours of work per day until the time of oral argument in this case. Plaintiff has not shown—that is, produced insufficient evidence to create a question of fact—that reservations agents at USAir were allowed to work four-hour shifts when she was placed on medical leave.

summary judgment is inappropriate.

We disagree with Plaintiff's characterization of her burden of showing that a reasonable accommodation existed in this case. Although both the statute and regulations list ("may include") part-time work as a potential reasonable accommodation, we do not accept that this listing means part-time work is always a reasonable accommodation. The ADA's "use of the word "reasonable' as an adjective for the word "accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires." *Stewart,* 117 F.3d at 1285 (internal quotations and citations omitted). "This is so because the word "reasonable' would be rendered superfluous in the ADA if employers were required in every instance to provide employees the "maximum accommodation or every conceivable accommodation possible.' " *Id.* (internal quotations and citations omitted). A plaintiff does not satisfy her initial burden by simply naming a preferred accommodation—even one mentioned in the statute or regulations; she must show that the accommodation is "reasonable" given her situation. *Id.* at 1286.

Whether an accommodation is reasonable depends on specific circumstances. *See Wernick v. Federal Reserve Bank,* 91 F.3d 379, 385 (2d Cir.1996). In a specific situation, part-time employment may or may not be reasonable. In this case, where USAir had no part-time jobs when Plaintiff demanded such a position, a request for part-time employment was unreasonable.

Although part-time work, as the statute and regulations recognize, may be a reasonable accommodation in some circumstances (particularly where the employer has part-time jobs readily available), we hold that USAir was not required to *create* a part-time position for Plaintiff where all part-time positions had already been eliminated from the company.[6] *See Whitbeck v. Vital Signs,*

[6]That USAir endeavored to accommodate Plaintiff's CTS by temporarily reducing her working hours on four different occasions in 1991 and 1992 does not, by itself, prove the reasonableness of Plaintiff's requested accommodation. An employer that "bends over

*Inc.,* 934 F.Supp. 9, 16 (D.D.C.1996), *rev'd on other grounds,* 116 F.3d 588 (D.C.Cir.1997) ("This

type of accommodation by an employer, providing an entirely new part-time position for a disabled

employee, courts have found is not required by the ADA.") (citations omitted). *Cf. White v. York

Int'l Corp.,* 45 F.3d 357, 362 (10th Cir.1995) ("[T]he ADA does not require an employer to promote

a disabled employee as an accommodation, nor must an employer reassign the employee to an

occupied position, nor must the employer create a new position to accommodate the disabled

worker."). Whether a company will staff itself with part-time workers, full-time workers, or a mix

of both is a core management policy with which the ADA was not intended to interfere.[7] Instead,

employers are only required to provide "alternative employment opportunities reasonably available

under the employer's existing policies." *See School Bd. Of Nassau County v. Arline,* 480 U.S. 273,

289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987).

---

backwards to accommodate a disabled worker ... must not be punished for its generosity by
being deemed to have conceded the reasonableness of so far-reaching an accommodation."
*Vande Zande v. Wisconsin Dep't of Administration,* 44 F.3d 538, 545 (7th Cir.1995); *see also
Holbrook v. City of Alpharetta, Ga.,* 112 F.3d 1522, 1528 (11th Cir.1997).

[7]To require an employer to create part-time or full-time positions when a management
decision has been made to employ only one or the other, places a heavy burden upon that
employer.

　　　　Many statutes and regulations exist that potentially affect an employer who has no
part-time workers, but is later forced to hire part-time employees. *See, e.g.,* 14 C.F.R. pt.
241, § 24, Schedule P-1(a)(d)(8) (1997) and Schedule P-10(c) (specifying different
financial reporting requirements for full-time versus part-time employees in aviation); 26
C.F.R. § 1.105-11 (1997) (differentiating between full-time and part-time employees for
income tax purposes); 7 C.F.R. § 3403.2 (1997) (setting forth small business
classifications which require full and part-time employees to each be counted as one
employee in determining whether the employer meets the less than 500 employees
requirement to qualify as a "small business"). Based on these and other regulations, an
employer who is forced to create a part-time work force will be subjected to a new and
complicated world of administrative and legal controls; so, we are reluctant to accept
that the ADA means that part-time jobs must be created solely to accommodate the
disabled.

To hold as plaintiff urges would create the anomaly that, if Plaintiff had been assigned to a part-time job one day *before* the part-time agents were furloughed, she would have been lawfully released with the other agents but, where she requested a part-time position soon *after* the part-time agents were furloughed, she would be legally entitled to a permanent part-time position. Or perhaps, Plaintiff would contend that, even under these supposed circumstances, she could keep her part-time job while all other part-time employees lost their jobs.

The intent of the ADA is that an employer needs only to provide meaningful *equal* employment opportunities. *See* S.Rep. No. 101-116, 101st Cong., 2nd Sess. 35 (1990). Acceptance of Plaintiff's argument would result in the non-disabled (those part-time agents without CTS) being discriminated against—on the most basic of employment issues, that is, do you have a job at all—in favor of the disabled (those part-time agents with CTS): only part-time reservations agents with CTS would have jobs. This would be an obvious problem. The ADA was never intended to turn nondiscrimination into discrimination. *Cf. Daugherty v. City of El Paso,* 56 F.3d 695, 700 (5th Cir.1995) ("Even viewing all the disputed evidence in favor of [the plaintiff], his ADA claim must fail because he did not show that he was treated differently from any other part-time employee whose job was eliminated.... There was no proof that the city treated him worse than it treated any other displaced employee."); *Rhodes v. Bob Florence Contractor, Inc.,* 890 F.Supp. 960, 967 (D.Kan.1995) ("[The plaintiff's] disability does not insulate him from the vagaries of the marketplace.").

We cannot accept that Congress, in enacting the ADA, intended to grant preferential treatment for disabled workers. *See, e.g.,* 42 U.S.C. § 12101(a)(8) ("[T]he Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; ..."). *See also Daugherty,*

56 F.3d at 700 ("[W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled. It prohibits employment discrimination against qualified individuals with disabilities, no more and no less.") As a matter of law, USAir did not fail to make reasonable accommodations for Plaintiff's CTS, especially given that, when part-time reservations agent positions again became available at USAir, it promptly notified Plaintiff and allowed her to fill one of those positions.

B. *Drop Keyboard*

Plaintiff also argues that USAir unreasonably delayed in providing her with a drop keyboard. She calculates the delay as thirteen months: 2 March 1993 ( when her doctor requested that her work station be modified "according to advice,")[8] to April 1994 (when she was provided with her own drop keyboard). Plaintiff, however, was placed on medical leave from 28 May 1993 until April 1994 because she had exceeded the sixty-day limit allowed by USAir for injured employees to work on limited duty. No reason exists to believe that Plaintiff was placed on medical leave because of the lack of a drop keyboard. The only delay we consider is the time that Plaintiff was working at USAir without the drop keyboard.

Considering the evidence in the light most favorable to Plaintiff, the delay in providing the drop keyboard was three months (two months before her leave and one month after her return). The district court did not err in concluding that this delay was reasonable, considering that Plaintiff had some access to a drop keyboard position during this time and that she was not required to type when

---

[8]Although Plaintiff understood the requested modifications to include a drop keyboard, the record is unclear about when the "advice" about a drop keyboard was communicated to USAir.

she had no access.[9]

AFFIRMED.

ANDERSON, Circuit Judge, concurring:

As the opinion for the court points out, at the relevant time USAir had made a legitimate business decision not to maintain part-time positions. Plaintiff adduced no evidence to raise an issue of fact that part-time work for her was a reasonable accommodation in this particular work context. In light of this, plaintiff failed to carry her burden of identifying a reasonable accommodation. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1286 (11th Cir.1997) (a plaintiff has the burden of proving that the accommodation identified by plaintiff is reasonable). Accordingly, I concur and join the opinion for the court.

---

[9]Plaintiff also argues on appeal that USAir failed to accommodate her reasonably by providing hourly five-minute breaks. We decline to address this argument because Plaintiff did not raise it in the district court. *See Depree v. Thomas,* 946 F.2d 784, 793 (11th Cir.1991) ("We have long held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.").