[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14925
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 8, 2012
JOHN LEY
CLERK

D. C. Docket No. 1:10-cv-01786-HLM

BRIAN W. BARTON,

                                        Plaintiff-Appellant,

versus

BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 8, 2012)

Before DUBINA, Chief Judge, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Appellant Brian W. Barton appeals the district court's grant of Appellee Georgia State University's ("GSU") motion for summary judgment on his claims that GSU violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794. Barton's claims stem from GSU's alleged failure to provide him a reasonable accommodation for his disabilities and adverse employment actions taken against him, including his termination, for either discriminatory or retaliatory reasons. After reviewing the record, and reading the parties' briefs, we affirm the district court's grant of summary judgment.

I.

In 2008, Harry Fenwick Huss, Dean of the Robinson College of Business of Georgia State University ("RCB"), offered Barton the newly created position of Senior Director of Marketing and Communications. Barton's position required him to interact with the advertising agency that RCB employed and to be responsible for the creative aspects of advertising. On October 3, 2008, Barton suffered a brain stem stroke that resulted in a number of physical impairments. Barton was able to return to work on February 23, 2009, without restrictions. Upon his return, Barton began to rely upon Tangela Johnson, an administrative

assistant within Barton's department, for help with administrative tasks that had become difficult due to his physical impairments.

In May 2009, RCB was informed that its budget had been reduced. In order to meet the new budget, RCB drastically cut spending on advertising and instituted a reduction in personnel in which eight positions within RCB were eliminated completely, including Johnson's, and four positions, including Barton's, were subject to a partial reduction in salary and hours worked. Barton's job was subject to a 20% reduction. Because Johnson's position was eliminated, she was transferred to an open position in a different department within RCB. After Johnson's transfer and upon Barton's request, Brent Winters was brought into Barton's department to work as an administrative assistant on a part-time basis. Barton did not immediately indicate that the workload reduction or Johnson's transfer would impair his ability to do his job, nor did he object to either.

On May 31, 2009, Barton sent an email to Ralph Kahlan, RCB's Assistant Dean for Finance and Administration, and Linda Nelson, a human resources official. In this email, Barton contended that the reduction in his hours was done with knowledge that it would be difficult for someone of his age and disability to find a new job. In response, Nelson met with Barton in June 2009. In this meeting, Barton conveyed his belief that his reduction in hours was related to his

physical disabilities. From this meeting, Nelson understood that Barton felt he needed a full-time assistant to help with tasks he had trouble performing due to his physical limitations. Barton also expressed displeasure with the current part-time assistant arrangement. Nelson denied his request for a full-time assistant because she did not believe the requested accommodation was reasonable.

During communications with Nelson, Barton inquired into what his job would entail after his hours were reduced. Nelson discussed the issue with Huss, who interpreted the conversation to be a request from Barton for an adjustment in his duties. On July 1, 2009, Barton, Nelson, Huss, and Kahlan had a meeting during which they discussed a modification of Barton's duties to coincide with his reduction in hours. The modification was intended to ensure that Barton's job properly reflected the 20% reduction. Barton believes the modification was issued as retaliation for his complaints regarding disability discrimination. Barton objected to the modified job arrangements, but Huss did not make any changes.

On July 10, 2009, Barton filed a Charge of Discrimination with the Georgia Commission on Equal Opportunity, complaining of disability discrimination and retaliation. On August 4, 2009, Barton went on a 12-week medical leave based upon a certification submitted by his healthcare provider that asserted that Barton was incapacitated and unable to perform his job functions due to his condition.

4

In July 2009, RCB received notification of additional, unexpected budget cuts. RCB again tried to deal with the budget cuts through cuts in non-personnel discretionary spending, *i.e.,* travel and supplies. However, these cuts were insufficient, and RCB was forced to further reduce personnel and payroll. Kahlan presented several options to RCB's administration, who made the final decision to completely eliminate eight positions, including Barton's. The personnel form submitted in conjunction with Barton's termination explains that the position was eliminated for budgetary reasons. The form further states that due to budget cuts, Barton's position was no longer necessary and that RCB planned to revert to the staffing model implemented before Barton's position was created. On August 27, 2009, Barton filed a second Charge of Discrimination with the Georgia Commission on Equal Opportunity complaining of discrimination and retaliation.

In Barton's amended complaint, he alleges that GSU failed to accommodate his disability, that he was discriminated against due to his disability, and that GSU retaliated against him. GSU filed a motion for summary judgment that the district court granted after finding that the requested accommodation was unreasonable as a matter of law and that Barton was unable to establish a prima facie case for retaliation or, alternatively, that GSU's legitimate, non-discriminatory reasons for their actions were pretextual.

## II.

This court reviews "the district court's grant of summary judgment *de novo*, considering all the evidence and factual inferences in the light most favorable to the non-moving party." *Flava Works, Inc. v. City of Miami*, 609 F.3d 1233, 1236 (11th Cir. 2010).

## III.

*A. Reasonable Accommodation*

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[1] Under the ADA, discrimination includes the failure to make "reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual . . . who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue

_____

[1] The Rehabilitation Act similarly proscribes disability discrimination by employers who receive federal funding. 29 U.S.C. § 794. Claims brought under either the Rehabilitation Act or the ADA are analyzed in the same manner. *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1526 n.2 (11th Cir. 1997). Therefore, this court's analysis of Barton's ADA claims is equally applicable to his claims under the Rehabilitation Act.

6

hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A). Barton bears the burden of demonstrating that an accommodation is reasonable, *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998), and he has failed to do so. Though Barton claims that he was simply seeking a job restructuring, which is specifically listed as a possible accommodation in the ADA, 42 U.S.C. § 12111(9)(B), Barton must have shown that his requested accommodation was "reasonable given [his] situation." *Terrell*, 132 F.3d at 626 (internal quotation marks and citation omitted). Fulfillment of his requested accommodation—the availability of a full-time administrative assistant—went beyond job restructuring and would have required GSU to create a new position and hire a new individual in spite of budget cuts.[2] *See Terrell*, 132 F.3d at 626–27 (holding that an employee's requested accommodation of reassignment to a part-time job was unreasonable because no part-time jobs were available at the time of the request and fulfilling the request would have required the employer to create a new position). Given the situation—a drastically reduced budget for his department, the provision of a part-time administrative assistant, and the need to create a new position to fulfill the

---

[2] Barton repeatedly argues that providing him with a full-time assistant would not require the creation of a new position. However, in GSU's first round of budget cuts, the full-time administrative assistant position for his department was eliminated. Furthermore, GSU cannot simply transfer Johnson back to his department without hiring a new individual because Johnson is working for a different department; a transfer back to Barton's department would necessitate the hiring of an individual to fill the opening left by Johnson in the other department.

requested accommodation—Barton has not met his burden to establish that the requested accommodation was reasonable.

### B. Retaliation Claims

### 1. Job Modification

The ADA and the Rehabilitation Act both prohibit retaliation against individuals who have opposed disability discrimination by issuing complaints or taking other actions. *See* 42 U.S.C. § 12203(a); 29 U.S.C. §§ 791(g), 793(d), 794(d). To establish a prima facie case for retaliation, Barton "must show (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." *Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1287 (11th Cir. 1997). Once Barton makes such a showing, GSU must articulate a legitimate, non-retaliatory reason for the employment action. *Id*. If GSU can do so, Barton must then establish that the proffered reasons are pretextual. *See id*. Even assuming Barton was able to establish a prima facie case for retaliation, he was not able to establish that GSU's proffered reason for the reduction in his duties was pretextual. GSU brought forth evidence that Nelson and Huss believed Barton requested a reduction in duties because of the cut in his hours and salary. Barton even admitted that the reduction in duties could have been an accommodation for his disability provided by GSU.

8

Furthermore, GSU believed the duties removed from Barton's job could be allocated to other workers, which would allow Barton to focus all of his energy on fewer tasks. Though Barton may dispute this belief, he cannot substitute GSU's business judgment for his own. *See Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253, 1265 (11th Cir. 2010).

*2. Termination*

Barton's position was eliminated during a second round of budget cuts and subsequent force reduction. Again, Barton has failed to rebut GSU's legitimate, non-retaliatory reason for his termination—a force reduction in an area with a depleted budget and GSU's ability and desire to return to the advertising model used before Barton's position was created. GSU attempted to meet its reduced budget first by decreasing discretionary spending and second by eliminating unfilled positions. When those measures failed, GSU was forced to eliminate personnel positions. The difference in the availability of funds when Barton's job was created and when his position was eliminated is stark. Barton has failed to show that the elimination of his position, one of eight others, was a pretextual reason to disguise a retaliatory termination.[3]

---

[3] For the same reasons, Barton's claim that he was subjected to discrimination based upon the elimination of his position fails to survive summary judgment.

IV.

For the foregoing reasons, we affirm the district court's grant of GSU's motion for summary judgment.

**AFFIRMED.**