[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11287
Non-Argument Calendar
_____

D.C. Docket No. 6:12-cv-01562-JA-KRS

CYNTHIA LOUISE RABB,

Plaintiff-Appellant,

versus

THE SCHOOL BOARD OF ORANGE
COUNTY, FLORIDA,
d.b.a. Orange County Public Schools,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____
(October 23, 2014)

Before HULL, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Cynthia Rabb appeals the grant of summary judgment in favor of her former employer, the School Board of Orange County, Florida ("School Board"), in her employment discrimination suit filed pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10(1). Rabb, who suffers from aphasia and reduced physical stamina as a result of a stroke, alleged that the School Board failed to reasonably accommodate her disability by offering her a part-time teaching position. The district court granted summary judgment to the School Board because, although Rabb was disabled, she had failed to present evidence that she was a "qualified individual" under the ADA or the FCRA. After review, we affirm.[1]

## I.  GENERAL ADA PRINCIPLES

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).[2] Discrimination under the ADA includes the failure to make a reasonable accommodation to the known physical or mental limitations of the individual. Id. § 12112(b)(5)(A); Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1262 (11th Cir. 2007) (explaining

---

[1]We review a grant of summary judgment de novo, construing the facts and drawing all reasonable inferences in favor of the nonmoving party. Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255 (11th Cir. 2007). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[2]Because disability discrimination claims under the FCRA are analyzed under the same standards as ADA claims, our reasoning with respect to Rabb's ADA claim applies equally to her FCRA claim. See Holly, 492 F.3d at 1255.

that "an employer's failure to reasonably accommodate a disabled individual itself constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship").

To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. Id. at 1255-56. In the district court, the parties agreed that Rabb was disabled, but contested the second and third elements of the prima facie case.

A qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In other words, the plaintiff must show that she "can perform the essential functions of [her] job without accommodation, or, failing that, show that [she] can perform the essential functions of [her] job with a reasonable accommodation." Davis v. Fla. Power & Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000). If the plaintiff cannot perform the essential functions of her job even with an accommodation, by definition she is not a qualified individual under the ADA. Id.

The plaintiff bears the burden both to identify an accommodation and show that it is reasonable. Willis v. Conopco, Inc., 108 F.3d 282, 284-86 (11th Cir. 1997). Once the plaintiff has met her burden of proving that reasonable

accommodations exist, the defendant-employer may present evidence that the plaintiff's requested accommodation imposes an undue hardship on the employer. Id. at 286 (explaining that undue hardship is an affirmative defense, but that evidence of whether an accommodation is reasonable will often also bear on whether the accommodation poses an undue burden on the employer).

Accommodations are "modifications or adjustments to the work environment, or to the manner or circumstances under which the position . . . is customarily performed . . . ." 29 C.F.R. § 1630.2(o)(1)(ii). The ADA, however, does not require an employer to accommodate an employee in the manner she desires, so long as the accommodation it provides is reasonable. Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997). An employer also is "not required to transform the position into another one by eliminating functions that are essential to the nature of the job as it exists." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1260 (11th Cir. 2001).

A reasonable accommodation "may include . . . job restructuring; part-time or modified work schedules; [or] reassignment to a vacant position . . . ." 42 U.S.C. § 12111(9) (emphasis added); see also 29 C.F.R. § 1630.2(o)(2)(ii). The fact that both the statute and regulations list part-time work "as a potential reasonable accommodation" does not mean "part-time work is always a reasonable accommodation." Terrell v. USAir, 132 F.3d 621, 626 (11th Cir. 1998). Rather,

4

"[w]hether an accommodation is reasonable depends on specific circumstances," and "[i]n a specific situation, part-time employment may or may not be reasonable." Id. Further, while part-time work may be reasonable if the employer has part-time positions "readily available," there is no duty to create a part-time position where the employer has eliminated part-time positions. Id. at 626-27 ("Whether a company will staff itself with part-time workers, full-time workers, or a mix of both is a core management policy with which the ADA was not intended to interfere."); see also Willis, 108 F.3d at 284, 286 (stating that reassignment to a new position is required as a reasonable accommodation only if there is an available, vacant position and concluding that the plaintiff presented no evidence of the existence of any vacant positions).

## II. ESSENTIAL FUNCTIONS OF RABB'S JOB

In Rabb's case, there is no dispute that, without accommodation, Rabb could not perform the essential functions of her position as a full-time fifth grade teacher at Winegard Elementary School ("Winegard"). Specifically, according to her job description, Rabb was required, as a full-time teacher, to be able to communicate effectively both orally and in writing, to manage a classroom and supervise the students, to work 196 days a year, seven and a half hours a day, in the classroom, and to stay after school to prepare lesson plans, grade homework, and conduct parent conferences. Rabb had suffered two earlier strokes, but was able to return

to full-time teaching after each one.  After her third stroke in December 2008, however, Rabb's aphasia and other physical impairments prevented her from teaching a full classroom of students or from teaching for a full day.[3]  Rabb's doctor released her to work part time, twenty hours a week, with small groups of up to six children in sessions limited to one hour.  In short, the parties agree that Rabb was no longer able be a full-time classroom teacher.

Because Rabb does not dispute that she could not perform the essential functions of her full-time teaching position without accommodation, the issue on appeal is whether Rabb presented evidence of a reasonable accommodation that would enable her to perform the essential functions.

### III.  RABB'S REASONABLE ACCOMMODATION CLAIM

Rabb contends that allowing her to work part-time was a reasonable accommodation.  As evidence, Rabb points to the fact that she worked as a part-time tutor at Winegard for over two years after her third stroke.

The problem for Rabb is that it is undisputed this part-time tutoring position was created solely for her benefit while she rehabilitated, was not considered permanent, and had to be eliminated for the 2011 – 2012 school year due to budget

---

[3]Rabb explained that with aphasia, she knew what she wanted to say, but could not always verbalize her thoughts correctly and had to take time to find the right words.  As a result, Rabb said that she risked losing her students' attention or conveying the incorrect information.  To properly present a lesson to a full class, Rabb would have had to do more preparatory work, practicing the words ahead of time.  Rabb agreed that she did not have the energy to do this for all the subjects a full-time teacher would have to teach each day.

constraints.  Specifically, in the 2009 – 2010 school year, Rabb, on the advice of her doctor, began volunteering at Winegard, doing part-time administrative work. During this time, Winegard's then-principal, Dr. Ella Thompson, learned that Rabb was experiencing financial hardship and tried to find paid work for her.  Dr. Thompson was able to use a portion of some Title I funds Winegard received that school year from the federal government to pay Rabb to tutor students on a part-time basis as an Instructional Resource Teacher.  In this position, Rabb worked about four hours a day, three days a week, tutoring small groups of students in preparation for test assessments.  Each tutoring session lasted twenty to thirty minutes, with breaks in between sessions.

Ordinarily, Winegard's Instructional Resource Teachers were full-time positions that involved numerous duties, not the limited, small-group tutoring Rabb performed.  Further, Winegard historically used tutors from temporary employment services to perform that kind of tutoring.  Indeed, while Rabb worked at Winegard, there were no other part-time teachers at all.  Dr. Thompson explained that she hoped Rabb would recover with rehabilitation and return to full-time teaching and never promised Rabb that the part-time tutoring position would be permanent.

Rabb continued in this part-time position for the 2010 – 2011 school year, during which Dr. Jhunu Mohopatra became Winegard's principal.  Dr. Mohopatra

7

explained that Dr. Thompson's school budget, which had funded Rabb's position, resulted in an overfunding to Winegard in excess of $300,000. In preparing the new budget for the 2011 – 2012 school year, Dr. Mohopatra had to repay the overfunding to the school district and to staff the school in compliance with state-mandated class-size requirements. As a result, Dr. Mohopatra could not fund Rabb's part-time tutoring position because it did not impact class size.[4]

Dr. Mohopatra explained the situation to Rabb and offered her a full-time fifth grade teaching position with a class of advanced students that would present less academic and disciplinary challenges. As an alternative, Dr. Mohopatra offered Rabb the option to have her name placed on a list for reassignment to another school that might have an available part-time teaching position. Rabb's doctor then advised Winegard that, while working at Winegard had been therapeutic for Rabb, transferring her to another school where people did not know her or respect her condition was "ill-advised medically."[5]

[4]In the district court, Rabb did not present any evidence to dispute Dr. Mohopatra's explanation that she eliminated Rabb's part-time tutoring position due to budget constraints. Rather, citing the school district's website, Rabb argued that because the School Board's general fund budget increased by $80,000 for the 2011 – 2012 school year, a reasonable inference could be drawn that budget concerns "may not have been the reason for Defendant's failure to make reasonable accommodations . . . ." This general fund budget information does not address, much less dispute, Dr. Mohopatra's testimony that Winegard had to repay an overfunding to the School Board and that she eliminated Rabb's position in an effort to balance Winegard's own budget and, more importantly, does not create a genuine issue of material fact as to whether Winegard had an available, part-time teaching position in the 2010 – 2011 school year.

[5]The School Board's ADA coordinator and Rabb's union representative discussed finding another position for Rabb within her doctor's restrictions, but no position was found. Rabb

8

In other words, the only accommodation Rabb identified was a part-time teaching position at Winegard, yet she failed to present any evidence that a part-time teaching position was available at Winegard.  Indeed, it is undisputed that Winegard generally did not employ part-time teachers.  Under this circuit's precedent, a part-time position that does not exist is not a "reasonable" accommodation because the ADA imposes no duty on the employer to create a part-time position to accommodate an employee's disability.  See Terrell, 132 F.3d at 626-27 (concluding that a requested part-time position was not a reasonable accommodation where the employer already had eliminated all part-time positions).

Furthermore, the fact that Winegard specially created (and was able to fund for two years) a part-time tutoring position for Rabb in the hope that she would recover enough to be able to return to full-time teaching does not prove that Rabb's requested accommodation was reasonable.  "Prior accommodations do not make an accommodation reasonable."  Wood v. Green, 323 F.3d 1309, 1314 (11th Cir. 2003) (concluding that a request for an indefinite leave of absence to recover from cluster headaches was not a reasonable accommodation although employer had

---

ultimately resigned her position to seek disability benefits.  To the extent Rabb contends her employer failed to engage in an interactive process with her to identify other potential accommodations, we have concluded that "where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant."  Willis, 108 F.3d at 285.  Because Rabb failed to meet her burden to show that a reasonable accommodation could have been made, we do not address the School Board's efforts to find some other accommodation.  See Lucas, 257 F.3d at 1256 n.2.

previously granted such requests).  As we have explained, "[a]n employer that bends over backwards to accommodate a disabled worker . . . must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation."  Terrell, 132 F.3d at 626 n.6 (quotation marks omitted); see also Lucas, 257 F.3d at 1257 n.3 ("Good deeds ought not be punished, and an employer who goes beyond the demands of the law to help a disabled employee incurs no legal obligation to continue doing so.")  Under the specific facts of this case, requiring the School Board to continue to fund the temporary, part-time tutoring position or to create another part-time teaching position at Winegard would not be reasonable.

Given that Rabb failed to present evidence that her proposed accommodation was reasonable, she did not establish her prima facie case.  See Terrell, 132 F.3d at 626; Willis, 108 F.3d at 284-86.  Accordingly, the district court properly granted the School Board's motion for summary judgment.[6]

**AFFIRMED.**

---

[6]The School Board's motion to strike Rabb's brief and for sanctions pursuant to 28 U.S.C. § 1927 and Federal Rule of Appellate Procedure 38 is denied.