[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11605
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-01847-TWT


KIRK MEDEARIS,

                                                    Plaintiff-Appellant,

versus

CVS PHARMACY, INC.,

                                                    Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 1, 2016)

Before WILSON, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Kirk Medearis, an African-American man with rheumatoid arthritis, appeals the district court's grant of summary judgment to his former employer, CVS Pharmacy, Inc. ("CVS").  Medearis's complaint alleged a claim against CVS under the Americans with Disabilities Act ("ADA"), a Title VII race discrimination claim, and a Title VII constructive discharge claim.  On appeal, Medearis argues that the district court erred in granting CVS summary judgment on each of the three claims.  Upon review of the record and consideration of the parties' briefs, we affirm.

## I. BACKGROUND

Medearis worked for CVS from September 1999 to September 2012.[1]  In 2011 he became a store manager at a CVS store in Atlanta.  He characterized the store manager's duties as "rally[ing] the troops" and being on call if anything was required at the store.  Medearis described needing to lift, bend, and squat as a part of his job.  At times he would spend the entire day unloading a truck of merchandise, carrying it up the steps, and stocking shelves.  When his store's total allowable employee hours were reduced, Medearis was obliged to work up to 70 hours a week.  During that time he would vacuum, mop, clean the store, and lift more than 10 pounds.

---

[1] In reviewing the district court's grant of summary judgment, we recount the facts in the light most favorable to Medearis.  *See infra* section II.

In October 2011, Medearis sent an email to CVS's District Manager Neal Lindler and Human Resources Business Partner Bob Henderson requesting, because of his rheumatoid arthritis, 50 extra allowable employee hours per week, a palletized delivery truck, and a flexible work schedule.  Henderson responded by email the next day, telling Medearis to call the corporate office to make this request, and then CVS would "engage in an active accommodation process to see what we can and cannot accommodate," and that CVS "welcome[s] the process per the [ADA] guidelines."  Pl.'s Ex. 3, Doc. 53-24.[2]  Medearis provided CVS with a note from his doctor recommending "light duty" and frequent breaks.  Pl.'s Ex. 6, Doc. 53-27.  The doctor specified that Medearis could not lift more than 10 pounds for six weeks.

Henderson told Lindler to inform Medearis "that he needs to apply for LOA [leave of absence] immediately, [t]hen we can see if we can accommodate the restrictions.  But 10 lbs as a store manager [we] would not be able to accommodate.  Therefore he needs to be on Full LOA until his restrictions are applicable."  Pl.'s Ex. 7, Doc. 53-28.  Henderson later explained to Medearis: "[E]ven the restriction of no lifting over 10 lbs I couldn't guarantee that we could accommodate in a [store] manager position.  We have many items that exceed this

---

[2] "Doc." refers to the docket entry in the district court record in this case.

limit and didn't want you to be noncompliant with your Dr. order and trying to help a customer." Pl.'s Ex. 9, Doc. 53-30.

Medearis began a period of leave on October 18, 2011. Medearis's doctor provided CVS with a completed reasonable accommodation questionnaire form, explaining that Medearis should work only part-time with frequent rest periods, lift no more than 10 pounds, and stand for no more than 30 minutes at a time. Medearis returned to work on November 29, 2011 with another doctor's note requiring that he lift no more than 15 pounds, stand no more than four hours at a time, and take breaks as needed.[3]

In January 2012, Medearis filed an internal complaint with David Purdy, CVS's Area Vice President, alleging harassment based on his disability and race. Specifically, Medearis asserted that Lindler and other CVS officers cut his operating hours at his store, treated him with hostility on conference calls, and issued him a written warning based on a fabricated story. CVS investigated the complaint, but Medearis contends that the investigation was inadequate. He testified that, when he spoke to Lindler about his complaints, Lindler laughed in his face. Medearis also testified that Lindler threatened to fire him within a year.

Medearis then made another internal complaint to CVS and requested a second leave of absence from March 10, 2012 through April 13, 2012. On April 6,

---

[3] Neither party argues that the distinction between 10 and 15 pounds is a meaningful one in terms of a store manager's essential functions.

2012, Medearis sent Lindler an email stating he "will not be able to return to work at this time," and in September of 2012, Medearis resigned via email.  Def.'s Ex. 13 at 2, Doc. 52-1.

Medearis filed a complaint against CVS in federal district court, alleging discrimination based on disability and race.  In his deposition, another CVS store manager, Jihad Jomaa, identified a job description for a CVS store manager, which contained a physical requirement of the "[a]bility to lift 35 pound trays/cases to [a] height of 4 feet and move trays/cases from one location to another in the store; ability to bend and squat frequently to move/locate merchandise."  Pl.'s Ex. Jomaa 1 at 2, Doc. 51-1.  Jomaa confirmed that regularly unloading trucks with merchandise weighing more than ten pounds was "part of [his] duties."  Jomaa Dep. At 5, Doc. 51.  Jomaa testified that a store manager could perform his or her duties without lifting more than 10 pounds, but the store would require additional staffing to perform the lifting otherwise performed by the store manager.

After discovery, CVS filed a motion for summary judgment.  In his response to the motion for summary judgment, Medearis submitted the same job descriptions as CVS, as well as additional CVS store manager job descriptions that declined to specify weight-lifting requirements.

A magistrate judge issued a Report and Recommendation, recommending that the district court grant CVS's motion for summary judgment as to all claims.

5

The district court adopted the Report and Recommendation in its entirety and granted summary judgement in favor of CVS. Medearis now appeals the summary judgment order.

## II. STANDARD OF REVIEW

We review a grant of summary judgment *de novo*. *Holly v. Clairson Indus. L.C.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007). Summary judgment is appropriate if, drawing all reasonable inferences in favor of the nonmoving party, the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (internal quotation marks omitted). Moreover, mere conclusions, unsupported factual allegations, and statements that are based on belief, as opposed to personal knowledge, are insufficient to overcome a summary judgment motion. *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005).

## III. DISCUSSION

### A. ADA Claim

The ADA mandates that employers shall not discriminate against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish

a prima facie case of discrimination under the ADA, a plaintiff must show he: (1) has a disability; (2) is a qualified individual; and (3) was subjected to unlawful discrimination because of the disability. *Holly*, 492 F.3d at 1255-56. It is undisputed that Medearis was disabled within the meaning of the ADA. Rather, CVS contested the second prong of Medearis's prima facie case.

Under the ADA, a qualified individual is an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). An accommodation is reasonable and necessary under the ADA "only if it enables the employee to perform the essential functions of the job." *Holly*, 492 F.3d at 1256. The ADA does not require an employer to eliminate essential functions of the job, however; if an individual is unable to perform them, even with the accommodation, she cannot meet the definition of qualified. *Id.* at 1256-57.

We evaluate whether a function is essential—a fundamental duty of the "position that an individual with a disability is actually required to perform"—on a case-by-case basis. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000); *see Holly*, 492 F.3d at 1258. We accord substantial weight to the employer's judgment as to which functions are essential. *Holly*, 492 F.3d at 1258. We may consider additional factors such as written job descriptions prepared for interviewing applicants. 29 C.F.R. § 1630.2(n)(3).

7

Discrimination under the ADA includes "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). The burden is on the plaintiff to identify a reasonable accommodation the employer should have made. *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998). Nonetheless, an employer is not required to give an employee his choice of accommodation. *Earl*, 207 F.3d at 1367. And, although reasonable accommodations may include job restructuring, part-time hours, or reassignment to a vacant position, an employer is not required to create and fund a position as an accommodation, nor must an employer reallocate job duties that would alter the essential function of a job. 42 U.S.C. § 12111(9); *Earl*, 207 F.3d at 1367; *Terrell,* 132 F.3d at 626.

The district court properly granted summary judgment in favor of CVS on Medearis's ADA claim. We agree with the district court that Medearis failed to demonstrate that he could perform the "essential functions" of his job, which included the ability to lift more than 10 pounds, with or without a reasonable accommodation. *See* 42 U.S.C. § 12111(8). Medearis acknowledged that his job required him to unload trucks and stock shelves on a regular basis. On some occasions, Medearis unloaded deliveries for hours a day, up to an entire day,

meaning that a substantial number of another employee's hours would be required to perform Medearis's duties if he were unable to perform them himself.  And Jomaa, a fellow store manager, testified that he had to lift more than 10 pounds every day.

Moreover, the CVS store manager job descriptions entered into evidence support Medearis's own testimony that lifting was a regular requirement of his job.  Because these written descriptions are evidence of the employer's judgment regarding which functions of a job are essential, we must give them substantial weight.  See 42 U.S.C. § 12111(8); *Holly*, 492 F.3d at 1258.  The job description introduced during Jomaa's deposition stated that a CVS store manager was required to have the "ability to lift 35 pound tray/cases to a height of four feet and move trays/cases from one location to another in the store; [and the] ability to bend and squat frequently."  Pl.'s Ex. Jomaa 1 at 2, Doc. 51-1.  Even those job postings for store managers that Medearis submitted, which were not so specific, included physical activities such as stocking shelves or loading and unloading deliveries.  Simply because the occasional job posting for store managers lacked specific physical requirements does not mean that physical requirements were not an essential function of the job.

The evidence consistently described the store manager position as one requiring the lifting of items from floor to shelf, including weighty items.

9

Accordingly, Medearis failed to provide evidence sufficient to create a genuine dispute as to the material issue of fact that it is an essential function of a store manager's job to lift more than 10 pounds. Viewing the evidence—Medearis's own statements, the testimony of another store manager, and the written job descriptions themselves—in the light most favorable to Medearis, while also giving substantial weight to the employer's judgment as to which functions were essential, *Holly*, 492 F.3d at 1258, the district court did not err in granting summary judgment on this claim.

Further, it was Medearis's burden to identify an available reasonable accommodation that would allow him to perform his job's essential functions and then establish that CVS denied him this accommodation. *See Terrell,* 132 F.3d at 624. Medearis's requested accommodation of lifting no more than 10 pounds was unreasonable because such an accommodation would have required that CVS eliminate an essential function of his job. *See Holly*, 492 F.3d at 1256; *Terrell,* 132 F.3d at 626. Additionally, Medearis's request for an additional 50 allowable employee hours to help with his duties was an unreasonable accommodation because CVS would be required to add more employee hours for the sole purpose of completing Medearis's essential functions. An employer is required neither to create and fund a position as an accommodation nor to re-allocate job duties in order to change an essential function. *Earl*, 207 F.3d at 1367; *Terrell*, 132 F.3d at

10

624. Medearis thus failed to meet his burden of showing his request for 50 allowable employee hours was a reasonable accommodation.

Medearis was not a qualified individual within the meaning of the ADA because he was unable to perform the essential functions of a store manager position with or without a reasonable accommodation. *See* 42 U.S.C. § 12111(8). He has failed to create a disputed material issue of fact that the essential job functions do not include lifting more than 10 pounds. Accordingly, the district court properly granted summary judgment on Medearis's ADA claim in CVS's favor.

## B. Title VII Race Discrimination Claim

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). "On any Title VII claim the plaintiff bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence." *Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008) (internal quotation marks omitted).

When a Title VII claim is supported by circumstantial evidence, the district court analyzes the case using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCann v. Tillman*, 526 F.3d 1370,

11

1373 (11th Cir. 2008).  Under *McDonnell Douglas*, the plaintiff has the initial burden to establish a prima facie case of disparate treatment by showing that: (1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated employees outside of his class more favorably; and (4) he was qualified to do the job.  *Id.*  If the plaintiff presents a prima facie case, and the employer offers a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must show that the stated reason is a mere pretext for unlawful discrimination.  *Id.*

As an initial matter, it is undisputed that Medearis, an African-American, belongs to a protected class and was qualified for his position as store manager. The determinative issue here is whether Medearis experienced an adverse employment action.  *See id.*  Medearis asserts that he suffered adverse employment actions when Lindler and other CVS officials provided Medearis's store with fewer allowable employee hours, gave him written reprimands, laughed at him, and threatened to fire him within a year.

To qualify as an adverse employment action, an employer's conduct that falls short of "an ultimate employment decision, must, in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee."  *Crawford*, 529 F.3d at 970 (alterations and internal

12

quotation marks omitted).  Specifically, a Title VII claim requires the employee to establish that he experienced "a *serious* and *material* change in the terms, conditions, or privileges of employment."  *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001).

In *Davis*, we affirmed a defendant's motion for judgment as a matter of law in a Title VII claim where the employee received two job performance memoranda harshly criticizing his performance that were placed in his personnel file.  *Id.* at 1235-36.  Although the employee received criticism and had his Officer-in-Charge designation removed, he "did not suffer any reduction in salary, loss of benefits [or] denial of promotions . . . as a result of these instances."  *Id.* at 1236.  We affirmed on the ground that there was no adverse employment action to sustain a Title VII claim.  *Id.* at 1246.

Title VII, we noted, does not demand proof of direct economic consequences.  The claimed impact of the discrimination "cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment" when "viewed by a reasonable person in the circumstances," regardless of the employee's subjective view.  *Id.*  Federal courts do not sit as "super-personnel department[s]" that reexamine an employer's business decisions.  *Id.* at 1244 (internal quotation marks omitted).  A Title VII claim based on a work assignment "strike[s] at the very heart of an employer's business judgment and expertise

because [it] challenge[s] an employer's ability to allocate its assets in response to shifting and competing market priorities." *Id.* Job performance memoranda that trigger no more tangible form of adverse action are treated as nonactionable under Title VII. *Id.* at 1241.

Here, the district court properly granted summary judgment to CVS because the evidence showed that Medearis suffered no adverse employment action. Medearis received several written reprimands, but unlike in *Davis*, these "write-ups" were not even made part of his personnel file. Medearis offered no evidence demonstrating that he experienced a tangible consequence such as a loss of pay or benefits, further discipline, or denial of a promotion based on these reprimands. *Id.* at 1239. Further, any reduction in store hours was "at the very heart of" CVS's business judgment and expertise because it challenged the company's ability to "allocate its assets in response to shifting and competing market priorities." *Id.* at 1244. Thus, Medearis cannot show he suffered an adverse employment action to support a Title VII discrimination claim.

**C. Title VII Constructive Discharge**

Medearis contends that, based on his race, CVS constructively discharged him when Lindler and other CVS officials created an unendurable work environment through harassment and the allocation of fewer allowable employee hours to Medearis's store. "Constructive discharge occurs when an employer

14

deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (internal quotation marks omitted). To make a constructive discharge claim under Title VII, an employee must demonstrate that his work environment and employment conditions were so unbearable that a reasonable person in the same position would have felt compelled to resign. *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997). "The standard for proving constructive discharge is higher than the standard for proving a hostile work environment." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001).

*Hipp* guides us in determining what constitutes a hostile work environment. In *Hipp*, an employee claimed that he was harassed by two regional vice presidents until he felt forced to resign. *Id.* at 1232. The employee alleged that he was verbally attacked in multiple public incidents and was informed that he should quit if he was unable to do his job. *Id.* at 1233. He was also told that he was doing a "lousy job" and that he was a terrible district manager. *Id.* We concluded that the behavior of the regional vice presidents did not rise to the level of a constructive discharge under the ADEA.[4] *Id.* at 1237.

---

[4] The standard for constructive discharge is the same in both the Title VII and ADEA contexts. *See Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1282 (11th Cir. 2003) (citing *Hipp* in a Title VII constructive discharge case).

The district court properly granted summary judgment in this case because, viewing the evidence in Medearis's favor, Medearis failed as a matter of law to establish that the conduct by Lindler and other CVS officials met the level of severity required to sustain his constructive discharge claim.  Similarly to *Hipp*, where the employee was told he was doing a "lousy job," Medearis had to suffer Lindler's laughing at his complaints and was told once that he would be fired within a year.  Title VII does not protect employees from stressful workplace environments.  "While we might disagree with the behavior of [Lindler and other CVS officials], we cannot find that it rises to the level of constructive discharge." *Id.* at 1233.  Lindler's actions failed to rise to the level of severity or pervasiveness that a reasonable person would be compelled to resign.  *Id.* at 1235.  Accordingly, the district court did not err in granting summary judgment on Medearis's constructive discharge claim.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment on each of Medearis's claims.

**AFFIRMED.**