[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15546
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cv-01784-EAK-EAJ

KENNETH PALMER,

Plaintiff-Appellant,

versus

ROBERT A. MCDONALD,
Department of Veterans Affairs,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 21, 2015)

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Kenneth Palmer appeals the district court's dismissal of his employment discrimination complaint against the Secretary of the Department of Veterans Affairs. On appeal, he argues that the district court erred when it dismissed his

complaint for failure to state a claim, because he alleged sufficient facts to state plausible claims of race and national origin discrimination, retaliation, hostile work environment and constructive discharge, disability discrimination, a failure to reasonably accommodate disabilities, and for injunctive relief. After careful review, we affirm in part, and vacate and remand in part.

We review de novo a district court's dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6), accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff. Chaparro v. Carnival Corp., 693 F.3d 1333, 1335 (11th Cir. 2012). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citations omitted). We review an order granting or denying a preliminary injunction for abuse of discretion. McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998).

First, we are unpersuaded by Palmer's argument that the district court erred in dismissing his race and national origin discrimination claims. Title VII prohibits

private employers from discriminating against an employee because of the employee's race or national origin, 42 U.S.C. § 2000e-2(a)(1), and the same protection extends to federal employees, see id. § 2000e-16(a); Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1243 (11th Cir. 1998). A plaintiff must show that (1) he belongs to a protected class, (2) he was qualified to do the job, (3) he was subjected to an adverse employment action, and (4) his employer treated similarly situated employees outside his class more favorably. Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). An "adverse employment action" is a "serious and material change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis omitted). The employee's subjective view of the significance and adversity of the employer's action is not controlling; instead, the employment action must be materially adverse as viewed by a reasonable person in the circumstances. Id. An employment practice is unlawful if race or national origin was a motivating factor for the employment practice, even though other factors also motivated the practice. 42 U.S.C. § 2000e-2(m).

In this case, Palmer has failed to state a claim of race or national origin discrimination. Most of his allegations do not plausibly show that any actions he complains of were taken because of his race or national origin, and while a lack of training and lack of accommodations may have caused him to work additional

3

hours to finish his work, he makes no nonconclusory allegations connecting the lack of training or accommodations to his race or national origin.  Further, to the extent he links performance bonus awards to race, he admits that he did not qualify for performance bonuses because he did not meet his productivity goals.  For the remaining actions for which Palmer alleges some connection to race, these are not adverse employment actions, since nothing he describes (such as the reassignment of his cases to African-American coworkers on his days off) constitutes a serious and material change in the terms, conditions, or privileges of his employment.

We also are unpersuaded by Palmer's retaliation claim.  Title VII prohibits discrimination based on an employee's opposition to an unlawful employment practice or participation in an investigation of an unlawful employment practice.  42 U.S.C. § 2000e-3(a).  The Americans with Disabilities Act (ADA) has a similar antiretaliation provision, which is incorporated into the Rehabilitation Act.  See id. § 12203(a); 29 U.S.C. § 791(f).  We assess ADA retaliation claims under the same framework used in Title VII.  Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997).  A plaintiff must allege that (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse employment action, and (3) a causal relationship between the two events exists.  Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008) (Title VII); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1328 (11th Cir. 1998) (ADA).

The first element may be met by making a charge or participating in a Title VII investigation.  42 U.S.C. § 2000e-3(a).  The first element also may be met by a request for a reasonable accommodation, which is a statutorily protected activity as long as the plaintiff has a good faith, objectively reasonable belief that he was entitled to those accommodations.  Standard, 161 F.3d at 1328.

For the second element, the plaintiff must show that the employer's actions were materially adverse to a reasonable employee, meaning that the employer's actions were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).  However, the antiretaliation provision "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  Id. at 68.  The actions must be likely to deter victims from complaining, "[a]nd normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence."  Id.  The employer's actions must be viewed objectively, but the significance of any given act of retaliation will often depend upon the particular circumstances.  Id. at 68–69.  The standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the complaint.  Id. at 69.

For the third element, a retaliation claim must be proved through traditional principles of but-for causation.  This means the plaintiff must establish that his

5

protected activity was a but-for cause of the employer's alleged adverse action. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2533–34 (2013).

Here, Palmer has failed to allege facts that plausibly showed either a materially adverse employment action or a causal relationship between his protected activity and his employer's actions. Many of the actions he alleges are not material because they would not deter a reasonable person from complaining about discrimination, and/or are the types of petty slights or minor annoyances that often take place at work and that all employees experience. Further, Palmer does not allege facts that would show that retaliation was the but-for cause of the purported adverse actions. As for the specific comment he alleges was made about him using his disability as a crutch, this was a one-time comment that would not deter a reasonable person from opposing discrimination.

Palmer further argues that he was retaliated against for the EEOC complaint that he filed in January 2012. But nothing in Palmer's complaint shows retaliation after he filed his EEOC complaint. Indeed, his allegation that that his cases were reviewed more often than was required by procedure does not show a materially adverse employment action -- since it apparently resulted in no action at all -- and moreover, is not causally related to his EEOC complaint -- since it began in December 2011, before he filed his EEOC complaint. Likewise, the incorrect performance error he received in May 2012 apparently resulted in no adverse

6

consequences, as it was ultimately resolved in Palmer's favor.  In July and August 2012, Palmer did not receive training that he requested, but that denial would not prevent a reasonable person from opposing discrimination, since the requests for training were requests for accommodations, and there are no causal facts alleged that connect the denial of training to the filing of his EEOC complaint.

Nor are we convinced by Palmer's claims of hostile work environment and constructive discharge.  To state a hostile work environment claim under Title VII, a plaintiff must show that (1) he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.  Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240, 1248–49 (11th Cir. 2014).  The fourth element requires a plaintiff to prove that the work environment was both subjectively and objectively hostile.  Id. at 1249.  The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.  Id.  In evaluating the objective severity

7

of the harassment, we consider, inter alia: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002). Title VII is only implicated in the case of a workplace that is permeated with discriminatory intimidation, ridicule, and insult, not the mere utterance of an epithet. Id. at 1276–77.

To state a claim for hostile work environment under Title VII's retaliation provision, the plaintiff must allege that (1) he engaged in protected activity; (2) after doing so, he was subjected to unwelcome harassment; (3) the protected activity was the but-for cause of the harassment; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and to create an abusive work environment. Gowski v. Peake, 682 F.3d 1299, 1311–13 (11th Cir. 2012). "Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim." Bryant v. Jones, 575 F.3d 1281, 1298 (11th Cir. 2009). Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job. Id. A plaintiff must show the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign. Id.

8

As for Palmer's hostile work environment claims based on race and national origin, he alleged no instances from the workplace in which race or national origin was explicitly mentioned.  Nor did he provide facts showing harassment that was objectively sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment.  As for his hostile work environment claims based on disability and retaliation, he mostly described ordinary interactions of the workplace -- e.g., that his supervisor hastily gave verbal instructions, yelled at him, spoke to him in a loud voice, implied he was incompetent, scolded him, laughed out loud by his cubicle, and did not help him first thing in the morning.  We cannot say this conduct was severe, physically threatening or humiliating, or unreasonably interfered with his job performance.  He also failed to allege nonconclusory facts showing any harassment that was based on his disability or done in retaliation.  Lastly, while he claimed that his supervisor yelled about his disability when he asked for an accommodation for time to learn a new process, this incident -- even if unfortunate -- was not severe enough to alter the terms and conditions of Palmer's employment.

Because he cannot show a hostile working environment, he likewise cannot meet the higher standard required to establish a constructive discharge claim. Palmer did not allege facts to plausibly show that the conditions of employment were so unbearable that a reasonable person would be compelled to resign.

9

Instead, he alleged only that all of "previous evaluations had been fully successful or better, [but he] knew that it was only a matter of time before management stepped up to get him fired for alleged cause, making him unemployable."

We also disagree with Palmer that the district court abused its discretion in denying him an injunction. A district court may grant injunctive relief if the movant shows: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if, issued, the injunction would not be adverse to the public interest. McDonald's, 147 F.3d at 1306. Yet as this record reveals, Palmer quit his job, moved to Colorado, and now works for a different government agency. He has not asked to be reinstated. He alleged no specific, nonconclusory facts concerning his need for the injunction; instead he just recited the injunction elements. Nor did he allege any nonconclusory facts connecting discrimination with any problems he had in getting his records or getting treatment in Colorado. Thus, the district court did not abuse its discretion in denying an injunction.

Finally, while we find no merit in Palmer's argument that the district court erred in dismissing his disability discrimination claim, we agree with Palmer that he has sufficiently stated a claim for failure-to-accommodate. The Rehabilitation Act prohibits federal agencies from discriminating in employment against

10

individuals with disabilities "solely by reason of her or his disability." 29 U.S.C. § 794(a). A plaintiff must show (1) that he has a disability, (2) he is otherwise qualified for the position, and (3) he was subjected to unlawful discrimination as a result of his disability. Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). It is not enough for a plaintiff to demonstrate that an adverse employment action was based partly on his disability; rather, the plaintiff must prove that he suffered an adverse employment action "solely by reason of" his disability. Id. "An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001). The question of whether an action is adverse is objective -- the plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse. Doe v. Dekalb Cnty. Sch. Dist., 145 F.3d 1441, 1448–49 (11th Cir. 1998). Any adversity must be material, and it is not enough that an action imposes some de minimis inconvenience or alteration of responsibilities. Id. at 1453 & n.21.

Here, most of the allegations related to Palmer's disability discrimination claim were of some de minimis inconvenience that did not rise to the level of objective adversity. Nor has Palmer alleged any facts that would show that management's actions were based solely on his disabilities (aside from a failure-to-accommodate claim we discuss below). Indeed, although Fed.R.Civ.P. 8(d) allows

11

pleading in the alternative and inconsistent statements, much of Palmer's complaint is written in the conjunctive, never alleging that he was discriminated against solely on the basis of his disability and instead relying on his conclusory beliefs that he was subjected to discrimination. Thus, even though it is unclear whether the district court applied the correct legal standard to his claims, Palmer failed to state a claim, and the district court correctly dismissed Palmer's claims of disability discrimination. See Surtain v. Hamlin Terrace Found., __ F.3d __, 2015 WL 3719501, at *4-*5 (11th Cir. June 16, 2015) (concluding that the plaintiff had failed to state a disability discrimination claim even though the district court improperly relied on a burden-shifting evidentiary framework instead of the Iqbal/Twombly pleading standards).

Nevertheless, Palmer has stated a reasonable accommodation claim. The ADA prevents an employer from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A). The same prohibition is incorporated into the Rehabilitation Act. See 29 U.S.C. § 791(f). A plaintiff must show that (1) he is disabled; (2) he was a "qualified individual" at the relevant time, meaning he could perform the essential functions of the job in question with or without

reasonable accommodations; and (3) he was discriminated against because of his disability.  Lucas, 257 F.3d at 1255.  The plaintiff must also show that a reasonable accommodation exists.  Terrell v. USAir, 132 F.3d 621, 624 (11th Cir. 1998).  An employer's failure to reasonably accommodate a disabled individual is itself discrimination, and the plaintiff does not bear the additional burden of having to show that the employer acted in a discriminatory manner toward its disabled employees.  Holly v. Clairson Indus., 492 F.3d 1247, 1262 (11th Cir. 2007).

As the Secretary concedes, Palmer stated a claim for a failure to reasonably accommodate him.[1]  He alleged that he suffered physical and mental impairments; that he needed additional computer training to help him process claims; that he was not permitted time to get pen and paper to write down instructions; that he was not provided with a computer mouse pad that would alleviate his wrist pain; that an ergonomic chair accommodation was not provided for months after he requested it; and that he was not allowed excluded time that would have allowed him to obtain

[1] The Secretary's only argument for affirming the dismissal of this claim is that Palmer's complaint constitutes a "shotgun pleading," which means that "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996).  While we have "roundly, repeatedly, and consistently condemn[ed]" shotgun pleadings, see Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 979 (11th Cir. 2008), the Secretary cites no authority in which we've affirmed the dismissal of a complaint solely on the grounds that it was a shotgun pleading when the district court relied on other grounds.  Instead, we've usually remanded for the plaintiff to properly replead their case, see, e.g., Magluta v. Samples, 256 F.3d 1282, 1284–85 (11th Cir. 2001), unless we've been able to "discern enough from the complaint's allegations to dispose of [the] appeal with confidence."  Miccosukee Tribe of Indians of Fla. v. United States, 716 F.3d 535, 557 (11th Cir. 2013).  We've been able to evaluate the allegations here.

13

the training required to prepare for upcoming new work processes.  He alleged that management knew of his disabilities and the accommodations he needed, and that the accommodations he asked for would allow him to do his job.  On this record, Palmer stated a claim for failure to accommodate, and the district court erred in dismissing his complaint.  The district court also erred to the extent that it applied a burden-shifting evidentiary framework to assess the complaint instead of the Iqbal/Twombly pleading standards, see Surtain, 2015 WL 3719501, at *4, and to the extent that it required Palmer to show that his employer acted in a discriminatory manner when it denied his accommodation, see Holly, 492 F.3d at 1262.  Accordingly, we vacate that part of the district court's order that dismissed Palmer's claim for a failure to accommodate.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**