[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14869
Non-Argument Calendar

_____

D.C. Docket No. 3:15-cv-00040-MCR-CJK


HENRIETTA AUSTIN,

                                                Plaintiff-Cross Appellee
                                                Appellant,

versus

FL HUD ROSEWOOD LLC,

                                                Defendant-Cross Appellant
                                                Appellee.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

(October 28, 2019)

Before TJOFLAT, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Henrietta Austin sued her former employer, FL HUD Rosewood, LLC ("Rosewood"), alleging age discrimination and retaliation in violation of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01 et seq.  The district court granted Rosewood summary judgment on Austin's claims of age discrimination but denied its motion for summary judgment on her claims of retaliation.  The retaliation claims proceeded to a jury trial and the jury found in favor of Austin, awarding $125,000 in damages.  Rosewood moved for a new trial. The district court denied Rosewood's motion for a new trial but granted its request for remittitur and reduced Austin's damages award to $25,000.  Austin declined the remittitur.  The district court held another jury trial on the issue of compensatory damages, at the conclusion of which Austin was awarded $20,000.

Both parties have appealed.  Austin appeals the district court's grant of summary judgment as to her claims of age discrimination.  She argues the district court was wrong to find that she had not suffered an adverse employment action. Rosewood appeals the district court's denial of its motion for a new trial, arguing that it was entitled to a new trial for liability and damages because (1) Austin violated a motion in limine by testifying at trial that her supervisor was "trying to force [her] out" and (2) the district court erroneously denied Rosewood's motion to strike Juror No. 3 for cause, forcing it to use a peremptory challenge.

2

Following careful review, we affirm.

## I.

Henrietta Austin was born in 1948.  In 1994, when she was approximately 46 years old, she was hired by Rosewood to be a housekeeper at Rosewood Manor, a nursing home located in Pensacola, Florida.  She worked alongside other housekeepers in "B Hall," a specific area of the facility.  Her cleaning rounds usually included: thirteen rooms in B Hall, three bathrooms, a shower, the nurses' office, the activities' office, the dining room (with help from another housekeeper) once per day, and sometimes the dietary office and its bathroom.  She also conducted peer interviews of potential hires, something that no other housekeeper did.

In September 2012, Rosewood hired Dwayne Lewis to be the Director of Environmental Services at Rosewood Manor.  Lewis served as Austin's supervisor. Shortly after his hire, Lewis began to review the workload of his department, as well as the division of tasks that were assigned to the various "halls" at Rosewood Manor.  Starting around January 2013, Lewis removed the additional housekeeper from dining-room cleaning duty.  Although Lewis made other adjustments, the change to the dining-room assignments was the only one that resulted in any housekeeper—Austin—having an increased workload.  At this time, Austin was approximately sixty-five years old.

3

Austin complained to Nicole Partridge, the administrator of Rosewood Manor.[1]  Austin says Partridge told her that Partridge thought the change was because of Austin's age, as Lewis had made disparaging comments about Austin's age to Partridge.  Partridge promised to talk to Lewis about it.  Soon after, Lewis confronted Austin about her complaint to Partridge.  He also changed Austin's schedule so that she had to cleaning the dining room by herself twice per day.  Austin later testified that she did not mind cleaning the dining room by herself unless it was particularly dirty.  As a result of her increased workload, Austin again complained to Partridge.  Lewis again confronted her and told her she should not have complained.  Austin was at this point given the additional assignment of cleaning the utility room, though she admits this was a result of other housekeepers failing to complete their own assignments.  The changes in her assignments caused Austin to work two additional hours in the dining room per day and she was usually the last housekeeper to leave.  Even so, she did not usually have to work overtime.  Austin also alleges that, on one occasion, Lewis provided her with written discipline for her failure to clean a box fan, something for which nobody had ever been written up before.

---

[1] On one earlier occasion, Austin complained to Gene Triplett, the Director of Operations at Rosewood Manor, about accusations that she stole cleaning supplies.  Triplett resolved Austin's concerns and told her that if she ever had a problem, she could always talk to him. Austin did not reach out to Triplett about her problems with Lewis until her last day of employment.

4

In response to her complaints about her increased workload, Austin alleges Lewis told her she was "too old" to be whining. Austin claims that Lewis told Larry Bender, a floor technician at Rosewood Manor, that Lewis was "tired of [Austin's] old ass" and that she needed to "take her old ass home," i.e., retire. Austin also alleges that Lewis told her she needed to retire and asked her when she was planning to retire, though she did not identify this comment during her deposition. Rosewood Manor has an antiharassment policy that prescribes a reporting chain of whom the employee "should" notify if she is being harassed by her supervisor. Austin complained about Lewis's conduct to Partridge, Patsy Williamson (who, while not a human resources officer, was considered to be part of the human resources department and was referred to on Rosewood Manor letterhead as "Staff Development/HR"), and Cassandra Moody (risk manager at Rosewood Manor).

On April 12, 2013, Austin found the dining room in an exceptionally dirty state. She asked Lewis if she could have help cleaning the dining room. He began to yell at her. He told her to clock out, which she did, and asked her to give him her keys and radio, which she also did. At that point, Austin called Partridge to complain about Lewis's treatment of her. Partridge told Austin to wait until she got into the office. Austin went to Partridge's office around 10:00 am. Lewis and Partridge had already met, however, and the two of them confronted Austin. They

accused her of throwing her radio and keys at Lewis, which she denied, and Partridge said she was going to recommend that Austin be reprimanded for insubordination. At this point, Austin walked out of Rosewood Manor, never to return. In later-filed legal papers, Austin characterized her decision as a "resign[ation]." Rosewood replaced Austin with thirty-year-old Trichelle Davis.

Austin filed a complaint with the United States Equal Employment Opportunity Commission, which gave her a notice of her right to sue on January 5, 2015. She says she also filed a charge with the Florida Commission on Human Relations. Then she filed her complaint in the United States District Court for the Northern District of Florida on February 10, 2015. We incorporate additional aspects of the procedural history in district court in our assessment of the merits of each party's appeal.

## II.

"We review the grant of a motion for summary judgment de novo and resolve all reasonable factual doubts in favor of the non-movant." Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1203 (11th Cir. 2010). Rosewood, "as the party moving for summary judgment, had the burden of demonstrating that there were no genuine issues as to any material fact, and that it was entitled to judgment as a matter of law." Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1266 (11th Cir. 2014).

6

"We review the district court's decision to deny a new trial for abuse of discretion." McGinnis v. Am. Home Mortg. Servicing, Inc., 901 F.3d 1282, 1291 (11th Cir. 2018). "Deference to the district court is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed." Id. at 1288 (quotation marks omitted).

### III.

### A.

We begin with Austin's appeal of the grant of summary judgment to Rosewood on her claims of age discrimination. The ADEA prohibits employers from discriminating against an employee who is at least forty years old "with respect to [her] compensation, terms, conditions, or privileges of employment, because of" that employee's age. 29 U.S.C. §§ 623(a)(1), 631(a).[2] Austin and Rosewood agree that Austin can satisfy three of the ADEA's four prima facie elements: she is a member of the protected age group because she was sixty-five years old at the time of the alleged discrimination; she was qualified for her housekeeping position; and she was replaced in that position by a substantially younger person. The viability of Austin's claims of age discrimination thus turns on one question: whether she suffered an adverse employment action within the

---

[2] Claims of age discrimination under the FCRA are analyzed under the same framework as the ADEA. Mazzeo, 746 F.3d at 1266. As a result, our analysis of Austin's ADEA age-discrimination claim also applies to her FCRA age-discrimination claim. See id.

meaning of the statute. An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." See Brown v. Snow, 440 F.3d 1259, 1265 (11th Cir. 2006) (quotation marks omitted).

Austin points to four potential examples of adverse employment actions. First, she claims that Lewis's order that Austin clock out on the morning of April 12, 2013 constituted an actionable "mini-suspension." Second, she claims the district court ignored other instances in which Lewis took action against Austin, including when he wrote her up for failing to clean a box fan. Third, she argues that her increased workload was itself an adverse action. Finally, she argues she was constructively discharged. Because her second and third points are components of her constructive discharge argument, we analyze those three points together.

Being sent home from work without pay can constitute an adverse employment action. See Franklin v. Potter, 600 F. Supp. 2d 38, 72 (D.D.C. 2009). Austin's claim on this ground fails because, while she has shown that she was sent home, she has not shown that she was not paid for the time between when Lewis told her to clock out and when she walked out of Rosewood Manor later that day. See id. Although it was not Austin's burden to prove there was no disputed issue

8

of material fact on this ground, it was her burden, as the plaintiff, to establish a

prima facie case of discrimination.  See Sims v. MVM, Inc., 704 F.3d 1327, 1332–

33 (11th Cir. 2013); cf. Howington v. Quality Rest. Concepts, LLC, 298 F. App'x

436, 442 (6th Cir. 2008) (unpublished) (holding an adverse action exists where

plaintiff, a bartender whose salary depended in part on tips, "undoubtedly" lost

compensation when she was sent home early); Franklin, 600 F. Supp. 2d at 58, 72

(adverse action exists where plaintiff was sent home and placed on "leave without

pay status").  In order to survive summary judgment, she had to present evidence

that there was a triable issue of fact on this ground.  See Sims, 704 F.3d at 1333.

The absence of evidence indicating she was unpaid during this brief period does

not mean this fact was in dispute.

Constructive discharge occurs when "an employer discriminates against an

employee to the point such that [her] working conditions become so intolerable

that a reasonable person in the employee's position would have felt compelled to

resign."  Green v. Brennan, 578 U.S. ___, 136 S. Ct. 1769, 1776 (2016) (quotation

marks omitted).[3]  The discriminatory conduct leading up to the employee's

involuntary resignation must have been "pervasive," with the workplace

---

[3] "The standard for constructive discharge is the same in both the Title VII and ADEA contexts."  Medearis v. CVS Pharmacy, Inc., 646 F. App'x 891, 898 n.4 (11th Cir. 2016) (per curiam) (unpublished) (citing Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1282 (11th Cir. 2003)).

"permeated with discriminatory intimidation, ridicule, and insult." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotation marks omitted); see Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001) (per curiam). "The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 809 (11th Cir. 2010) (en banc) (quotation marks omitted); see Palmer v. McDonald, 624 F. App'x 699, 704 (11th Cir. 2015) (per curiam) (unpublished) (holding that an employee who cannot make out a claim for hostile work environment "likewise cannot meet the higher standard required to establish a constructive discharge claim"). We have recognized that "[t]he threshold for establishing constructive discharge in violation of [the] ADEA is quite high." Hipp, 252 F.3d at 1231.

We cannot say that the behavior to which Austin was subjected was so objectively intolerable that any reasonable person would have resigned. She asserts the following facts in support of her constructive discharge claim: (1) ageist comments Lewis made to her on several occasions, (2) being written up for an issue that was never previously worthy of discipline, (3) an increased workload; and (4) being forced to clock out after complaining about her workload. The comments, while undoubtedly hurtful to Austin, were not so frequent or offensive

10

to rise to the level needed to support a claim of constructive discharge.  See

Faragher v. City of Boca Raton, 524 U.S. 775, 787–88, 118 S. Ct. 2275, 2283

(1998) (stating that offhand comments and isolated incidents do not create a

sufficiently hostile work environment "unless extremely serious"); cf. EEOC v.

Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1247 & nn.2, 4 (11th Cir.

1997) (affirming constructive discharge finding where supervisor made frequent

offensive comments about plaintiff's physical appearance and age, demeaned her

mental capacity, and called her an "old lady" and "senile").

An increased workload gives rise to an ADEA claim only if the change is

"so substantial and material that it does indeed alter the terms, conditions, or

privileges of employment."  Davis v. Town of Lake Park, 245 F.3d 1232, 1245

(11th Cir. 2001) (quotation marks omitted), abrogated on other grounds by

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405 (2006).

As a result of the changes made by Lewis, Austin had to work two additional hours

in the dining room, but her workday was not, as a general matter, extended.

Having to work two additional hours per day at a certain task does not rise to the

level of altering the terms, conditions, or privileges of employment.  The changes

did not affect Austin's job title, classification, salary, or regular workday hours,

and these tasks were not much different or more arduous than those to which she

had already been assigned.  Cf. id.  As for the box fan, criticism of an employee's

11

job performance that does not lead to "tangible job consequences" cannot form the basis for an ADEA suit.  See id. at 1241.  Austin does not point to any consequences that resulted from the write-up.  Much as these two factors cannot support individual ADEA claims, neither can they support Austin's claim of constructive discharge.  See Wardwell v. Sch. Bd. of Palm Beach Cty., 786 F.2d 1554, 1557–58 (11th Cir. 1986) (per curiam) (denying constructive discharge claim where employee was "overburdened" with additional work but her working hours remained the same).

## B.

We now address Rosewood's appeal, which challenges the district court's denial of its motion for a new trial.  Federal Rule of Civil Procedure 59(a) permits the district court to grant a new jury trial if, in the court's opinion, "the verdict will result in a miscarriage of justice."  Jenkins v. Anton, 922 F.3d 1257, 1264 (11th Cir. 2019) (alteration adopted and quotation marks omitted).

## 1.

Prior to trial, Rosewood moved in limine to exclude trial evidence, testimony, or argument regarding Austin's claims that (1) she was subjected to a "mini-suspension," (2) Rosewood "forced her to resign" or subjected her to a constructive discharge, and (3) she was entitled to back pay.  The district court largely denied Rosewood's motion, except that it found that the use of the specific

12

terms "constructive discharge" and "forced to resign" would be irrelevant and unduly prejudicial, and thus these phrases were excludable under Federal Rule of Evidence 403.  At trial, Austin testified that Lewis was "trying to force [her] out" but that she "tried to stick it out."  Defense counsel immediately approached the bench to object to this testimony.  The district court provided a limiting instruction to the jury that Austin did not have a claim for constructive discharge.  During deliberations, the jury submitted a question to the court: "What is the definition of constructive discharge?"  The district court responded that Austin was not making out such a claim and the jury should not consider the end of her employment in assessing her retaliation charge.  After the jury found for Austin on her retaliation claim, Rosewood moved for a new trial on the grounds that Austin's improper testimony was unduly prejudicial and denied Rosewood its right to a fair trial.  The district court denied the motion.

"The voicing of potentially prejudicial remarks by a witness is common, and any prejudice is generally cured efficiently by cautionary instructions from the bench."  United States v. Evers, 569 F.2d 876, 879 (5th Cir. 1978) (criminal context).[4]  Because we presume juries follow the instructions given to them, this solution usually suffices.  See Ash v. Tyson Foods, Inc., 664 F.3d 883, 898 (11th

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. Id. at 1209.

13

Cir. 2011).  A curative instruction regarding certain evidence is inadequate "only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition."  United States v. Perez, 30 F.3d 1407, 1410 (11th Cir. 1994) (per curiam) (quotation marks omitted) (criminal context).

While the district court stated, before trial, that the type of language eventually used by Austin during her testimony has "a specific, highly prejudicial meaning," it was within the court's discretion to find that these comments were "not so highly prejudicial in nature as to be incurable" when considering the jury's limited exposure plus the court's attempts to cure the prejudice.

Rosewood has not shown that the jury did not follow the court's curative instruction.  It is true that the jury submitted a question regarding the meaning of constructive discharge after the district court's initial curative instruction.  But the district court responded to that question with an additional instruction in which it again told the jury to disregard the testimony related to a constructive discharge. What is more, the term "constructive discharge" was not introduced by Austin's testimony: its only mention at trial before the jury came when the court delivered its initial curative instruction.  It makes sense, then, that the jury would want to know the meaning of this otherwise unmentioned and unexplained legal term of art.

14

We see no prejudice resulting from Austin's improper testimony. Rosewood's only additional evidence of supposed prejudice is the fact that the damages award was so high that the district court granted remittitur. However, a large damages award does not, without more, show that the jury was improperly motivated. In Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435 (11th Cir. 1985), we noted the possibility that a "grossly excessive award" could lead to a finding that the jury's verdict was "swayed by passion and prejudice" such that a new trial would be warranted. Id. at 1447. But we cautioned that this extraordinary step should be taken "only where the verdict is so excessive as to shock the conscience of the court." Id. Here, the district court granted remittitur on the grounds that the evidence could not support the verdict, not that the verdict was shocking or clearly swayed by the jury's passion or prejudice. We see no basis for disagreeing with the district court's finding that the verdict was not evidence of prejudice arising from Austin's testimony.

2.

Rosewood also objects to the district court's treatment of Juror No. 3, a member of the jury venire. During voir dire, Juror No. 3 did not respond to any questions, including whether he had ever been a plaintiff or defendant in a civil case. But his juror questionnaire revealed that he had recently been involved in civil litigation, so he was questioned individually. During questioning, he stated

15

that he was an "anarcho-communist" who does not "really believe in the judicial system" but that he would not have an issue serving on the jury.  Rosewood moved to strike Juror No. 3 for cause.  The district court denied the motion on the basis of Juror No. 3's assertion that he could participate fully as a juror.  Rosewood used a peremptory strike to exclude Juror No. 3.  Following trial Rosewood moved for a new trial on the grounds that the district court's failure to strike Juror No. 3 for cause resulted in the premature exhaustion of Rosewood's peremptory challenges.  The district court denied the motion.

We do not find any abuse of discretion in the district court's denial of this motion.  It is not reversible error for a district court to deny a party's motion to strike for cause, thus forcing the party to "use up" its peremptory strikes.  See United States v. Farmer, 923 F.2d 1557, 1566 (11th Cir. 1991) (citing Ross v. Oklahoma, 487 U.S. 81, 88, 108 S. Ct. 2273, 2278 (1988)).  Rosewood argues that the jury's large damages award indicates that a juror on whom it otherwise would have used a peremptory strike was improperly seated.  This argument is entirely conjectural.  In addition, as discussed above, the district court did not find that the high damages verdict was based on the jury's bias or prejudice and we see no reason to conclude otherwise.

**AFFIRMED.**

16